UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 04-017 |
| JOSEPH SMITH | SECTION G |

**ORDER AND REASONS**

Before the Court is Joseph Smith's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] The government opposes.[2] Having considered the record, the law, and the submissions by both parties, the Motion is hereby DENIED.

**I. Factual Background[3]**

This case arises from an attempted bank robbery that resulted in the death of Orleans Parish Criminal Deputy Sheriff Sidney Zaffuto who was working a security detail at the bank. The three co-defendants, Joseph Smith, Herbert Jones and John Johnson entered the Iberia Bank on General DeGaulle Drive in New Orleans, Louisiana on January 8, 2004, around 11:45 a.m. Mr. Smith approached bank security officer, Orleans Parish Criminal Deputy Sheriff Sidney Zaffuto, held a firearm to Deputy Zaffuto's head and disarmed Zaffuto. Mr. Smith and co-defendant John Johnson were shot by another bank security guard, Orleans Parish Deputy Andrew Jenkins. Mr. Smith fell to the floor due to his injury. The third co-defendant, Herbert Jones, fled the bank as the shooting began. Deputy Zaffuto retrieved Mr. Smith's gun and attempted to shoot Mr. Johnson several times,

---

[1] Rec. Doc. 1838.

[2] Rec. Doc. 1840.

[3] All facts taken from Trial Transcript, Rec. Docs. 1807 and 1808.

1

however, the gun would not fire. Mr. Johnson shot at Deputy Zaffuto and fatally hit him in the chest. Mr. Smith then jumped on Deputy Zaffuto, recovered his firearm and attempted to shoot Deputy Jenkins, using Deputy Zaffuto's body as a shield. Mr. Johnson shot Deputy Jenkins and then fled the bank with Mr. Smith.

New Orleans Police Lieutenant Reginald Jacque, upon arriving on the scene, observed Mr. Smith leaning out of a parked vehicle, covered in blood. Lieutenant Jacque asked Mr. Smith what was wrong, to which Mr. Smith responded "I'm shot all over."[4] Lieutenant Jacque immediately handcuffed Mr. Smith and asked if Mr. Smith had a weapon on him, to which Mr. Smith replied that he had left his weapon inside the bank.[5] At some point during the investigation following the incident, Mr. Smith made a statement to Federal Bureau of Investigation Special Agent Tim Denny. However any statements Mr. Smith made to Agent Denny were not admitted during the trial.[6]

## II. Procedural History

The three co-defendants were initially indicted on January 16, 2004.[7] The first Superseding Indictment was filed on January 20, 2004.[8] The Second Superseding Indictment was filed on January 28, 2005 and charged the three co-defendants with Conspiracy, Armed Bank Robbery Resulting in Death in violation of 18 U.S.C. § 2113(a) and (e), Use of a Firearm in Furtherance of a Crime of

---

[4] Rec. Doc. 1807 at 194-5.

[5] *Id.* at 195.

[6] *See id.* at 196-219.

[7] Rec. Doc. 1.

[8] Rec. Doc. 26.

Violence Resulting in Death in violation of 18 U.S.C. § 924(c)(1)(a).[9] Additionally, Mr. Johnson and Mr. Smith were charged in Counts Four and Five, respectively, with additional firearms offenses in violation of 18 U.S.C. §924(c)(1)(a).[10] The government filed notice of its intent to seek the death penalty against Mr. Smith and his co-defendant John Johnson.[11] Subsequently, Mr. Jones and Mr. Johnson each moved to sever their trials from their co-defendants.[12] The Court granted Mr. Jones' motion to sever on April 27, 2005.[13] Mr. Johnson's motion to sever was granted by the Court on June 17, 2005.[14]

Herbert Jones pled guilty to the Third Superseding Bill of Information on June 7, 2007, but prior to being sentenced, he died on March 21, 2009.[15] Mr. Johnson's jury trial was held on May 15, 18 and 19, 2009.[16] The jury found Mr. Johnson guilty on all counts.[17] The Death Penalty Phase of Mr. Johnson's trial was held on May 20-22, and 26-27, 2009 and the jury returned a verdict to impose the death penalty.[18] Mr. Johnson's Motion to Set Aside the Death Penalty and two Motions for a New Trial were all denied by the Court, except for the sentencing selection phase verdict,

---

[9] Rec. Doc. 157.

[10] *Id.*

[11] Rec. Docs. 160 and 161.

[12] Rec. Doc. 202 and 208.

[13] Rec. Doc. 231.

[14] Rec. Doc. 274.

[15] Rec. Docs. 526 and 1245.

[16] Rec. Docs. 1212, 1214 and 1219.

[17] Rec. Doc. 1219.

[18] Rec. Docs. 1221, 1225, 1226, 1235, and 1238.

which the Court granted and ordered a new trial for the sentencing selection phase.[19] On August 7, 2014 the government filed a motion to withdraw the death penalty notice as to Mr. Johnson, which the Court granted on August 11, 2014.[20] Also on August 7, 2014, Mr. Johnson filed a signed Waiver of Rights of Appeal and Plea Agreement.[21] Mr. Johnson was sentenced to life imprisonment on September 19, 2014.[22]

A jury trial for Joseph Smith was held on September 23 and 24, 2013 before United States District Judge Helen G. Berrigan. Prior to trial, an *Atkins* hearing was held for Mr. Smith on June 7-10, 2010.[23] The Court issued an Order on June 23, 2011 prohibiting the death penalty from being imposed on Mr. Smith based on the evidence presented during the *Atkins* hearing.[24]

During trial, testimony, and other evidence, including a surveillance film from the bank showing the entire attempted robbery and shooting were admitted into the record.[25] On September 24, 2013, movant, Joseph Smith, was convicted after a jury trial of four counts of the Second Superseding Indictment for his role in the attempted bank robbery which resulted in the death of a bank security officer.[26] Mr. Smith was sentenced on October 9, 2013 to life imprisonment for counts two and three, 60 months imprisonment for count one, to be served concurrently, and 60 months as

---

[19] Rec. Docs. 1330, 1337, 1448, 1487, 1508 and 1618.

[20] Rec. Docs. 1821 and 1823.

[21] Rec. Doc. 1820.

[22] Rec. Doc. 1830.

[23] Rec. Docs. 1527, 1528, 1529 and 1534.

[24] Rec. Doc. 1630.

[25] *See* Trial Transcript, Rec. Docs. 1807 and 1808.

[26] Rec. Docs. 157 and 1794-1.

to count five, to be served consecutively to counts one, two and three.[27]

Following his sentencing, Mr. Smith's trial attorney, Dane Ciolino, filed a Notice of Appeal to the United States Court of Appeals for the Fifth Circuit on October 10, 2013.[28] After having received correspondence directly from Mr. Smith, the Court issued an order on December 19, 2013 directing Mr. Ciolino to advise his client as to the status of the appeal.[29] The Fifth Circuit dismissed Mr. Smith's appeal on June 25, 2014 as frivolous after Mr. Ciolino had moved to withdraw and filed an *Anders* brief.[30] Specifically, the Fifth Circuit found that Mr. Ciolino's assessment that the appeal presented no non-frivolous issues for appellate review was correct.[31] There is no indication in the record that Mr. Smith sought an appeal from the Fifth Circuit's decision. Mr. Smith did file a motion for the appointment of counsel to assist in the preparation of his § 2255 motion, which the Court denied on January 23, 2015.[32]

Mr. Smith filed this instant Motion to Vacate under 28 U.S.C. § 2255 on July 8, 2015.[33] The government filed an opposition to Mr. Smith's motion on August 21, 2015.[34]

---

[27] Rec. Doc. 1801.

[28] Rec. Doc. 1802.

[29] Rec. Doc. 1809.

[30] Rec. Doc. 1818.

[31] *Id.* at 2-3.

[32] Rec. Docs. 1834 and 1835.

[33] Rec. Doc. 1838. Although not entered into the record until July 14, 2015, Mr. Smith signed the petition as being mailed on July 8, 2015. Given that the filing is by a prisoner, the date of filing is deemed to be the date the document is placed in the prison mail. *Houston v. Lack*, 487 U.S. 266, 101 L. Ed. 2d 245 (1988).

[34] Rec. Doc. 1840.

### III. Arguments

In his motion, Mr. Smith raises four claims of ineffective assistance of counsel. First, Mr. Smith alleges that his trial attorney failed to address the lack of *Miranda* warning before he made statements to "arresting officer" Tim Denny.[35] Second, Mr. Smith claims he received ineffective assistance of counsel for his attorney's failure to follow-up regarding a proposed plea agreement as requested by Mr. Smith.[36] Mr. Smith's third ineffective assistance claim alleges that his attorney failed to address Count Two's fourth requirement under 18 U.S.C. § 2113(e) and the vague instructions concerning multiple defendants.[37] Lastly, Mr. Smith argues that he received ineffective assistance of counsel for his attorney's failure to address the mitigating factor - Mr. Smith's "diminished capacity" due to his "intellectual deficiencies" under U.S.S.G. 5K2.13, at sentencing.[38]

The government argues Mr. Smith's motion should be denied since he has failed to show deficient performance by counsel or resultant prejudice.[39] Specifically, the government contends that Mr. Smith's claim that his counsel was ineffective for allowing un-*Mirandized* statements to Federal Bureau of Investigation Special Agent Tim Denny to be admitted is factually untrue since Agent Denny's testimony did not include any information regarding statements made by Mr. Smith to him.[40] The government further argues that even if Mr. Smith is referring to statements made to the

---

[35] Rec. Doc. 1838 at 14.

[36] *Id.* at 15.

[37] *Id.* at 15-16.

[38] *Id.* at 16.

[39] Rec. Doc. 1840 at 1.

[40] *Id.* at 4-5.

6

actual arresting officer, the statements are admissible despite the lack of *Miranda* warnings due to the fact that Mr. Smith was not in custody when he made the first statement and the second statement falls within the public safety exception.[41] Additionally, Mr. Smith cannot show that the admission of these statements prejudiced him because the statements were "not a significant factor" in convincing the jury of Mr. Smith's involvement, and actually supported the defense's theory of the case.[42] As to Mr. Smith's second claim, the government maintains there was never a formal plea offer made for Mr. Smith to accept, so his counsel cannot be found deficient for failing to "follow-up."[43] Next, the government contends Mr. Smith's third claim is also without merit since his defense counsel actually put forth the argument that Mr. Smith was not the shooter that killed the security officer and did not have the intent to shoot anyone at trial.[44] Finally, the government argues that Mr. Smith's final claim is without merit because his lawyer did successfully have the possibility of the imposition of the death penalty removed and at that point, a life sentence was statutorily mandated.[45]

## IV. Legal Standard

A federal prisoner may move to vacate, set aside, or correct his sentence based on four grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States;" (2) "that the court was without jurisdiction to impose such sentence;" (3) "that the sentence

---

[41] Rec. Doc. 1840 at 5-6.

[42] *Id.* at 6.

[43] *Id.* at 7.

[44] *Id.* at 8-9.

[45] *Id.* at 10-11

was in excess of the maximum authorized by law;" or (4) that the sentence "is otherwise subject to collateral attack."[46] "The scope of relief under § 2255 is consistent with that of the writ of habeas corpus."[47] Relief under § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and, would, if condoned, result in a complete miscarriage of justice."[48]

An evidentiary hearing must be held unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief,"[49] or the prisoner fails to show any "independent indicia of the likely merit of [his] allegations."[50] The prisoner must establish his claims by a preponderance of the evidence.[51] If the court determines that the prisoner is entitled to relief, "[it] shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate."[52]

## V. Analysis

*A. Ineffective Assistance of Counsel*

The Sixth Amendment entitles movant to the effective assistance of counsel at all critical

---

[46] 28 U.S.C. § 2255(a); *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996).

[47] *Id.*

[48] *United States v. Capua*, 656 F2d 1033, 1037 (5th Cir. 1981).

[49] 28 U.S.C. § 2255(b).

[50] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006); *see also United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990)("If the record is clearly adequate to dispose of the allegations, the court need inquire no further.").

[51] *Wright v. United States*, 624 F.2d 557, 558 (5th Cir. 1980).

[52] 28 U.S.C. § 2255(b).

stages of the criminal process. To sustain a claim of ineffective assistance of counsel, a petitioner must show that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense."[53] A court may consider the twin requirements of deficient performance and prejudice in either order; failure on one prong obviates the need to analyze the other.[54]

Deficient performance requires a showing "that counsel made errors so serious that counsel was not functioning as counsel guaranteed" by the Sixth Amendment and that "counsel's representation fell below an objective standard of reasonableness."[55] Generally, to make such a showing, a defendant must "identify the acts or omissions alleged not to have been the result of reasonable professional judgment."[56] A reviewing court must then determine whether the identified acts or omissions fell outside "the wide range of professionally competent assistance," while indulging "a strong presumption that counsel's conduct falls within" that range.[57] A defendant must overcome "a strong presumption" that counsel's conduct "might be considered sound trial strategy."[58]

Once there has been a showing of deficient performance, the *Strickland* test also requires a showing of prejudice. Prejudice requires a defendant to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

---

[53] *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed.2d 674 (1984).

[54] *Id.* at 697, 104 S. Ct. at 2069.

[55] *Id.* at 687-688, 104 S. Ct. at 2064.

[56] *Id.* at 690, 104 S. Ct. at 2066.

[57] *Id.* at 689, 104 S. Ct. at 2065.

[58] *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L.Ed. 83 (1955)).

9

been different."[59] A reasonable probability is one sufficient to undermine confidence in the outcome.[60]

### 1. *Claim One: Failure to Address Lack of Miranda Warning*

Mr. Smith alleges that his trial attorney failed to address the lack of *Miranda* warnings provided by the arresting officer. Mr. Smith contends that the arresting officer was Federal Bureau of Investigation Special Agent Tim Denny, and that Agent Denny failed to provide Mr. Smith any *Miranda* warnings before Mr. Smith made statements to him. The government argues that because the statements made to Agent Denny was not presented to the jury, this claim is without merit. In the alternative, if the Court were to read Mr. Smith's petition as referring to statements made to the actual arresting officer, Lieutenant Reginald Jacque, the government argues those statements are still admissible, even with a *Miranda* violation since Mr. Smith was not in custody when he made the first statement, and the second statement falls under the public safety exception.

The statement made to Agent Denny was discussed during the jury charge conference.[61] Specifically, the Court asked if a jury instruction regarding a confession was necessary since there had been no testimony regarding Mr. Smith confessing.[62] The government confirmed that they had not questioned Agent Denny regarding the statement Mr. Smith made to him and that the statements made to Lieutenant Jacque were not confessions per se.[63] Additionally, Mr. Smith's attorney

---

[59] *Strickland,* 466 U.S. at 694, 104 S. Ct. at 2068.

[60] *Id.*

[61] Rec. Doc. 1808.

[62] *Id.* at 6.

[63] *Id.*

confirmed that none of the statements were custodial.[64] Both the government and defense concurred that jury instructions regarding confessions, statements and voluntariness could be eliminated.[65] Additionally, a review of Agent Denny's testimony confirms that it did not include any statements made to him by Mr. Smith.[66]

Arresting officer Lieutenant Jacque's testimony did include the two statements made by Mr. Smith.[67] First, upon arriving at the scene, Lieutenant Jacque observed Mr. Smith "leaning halfway out of [a red SUV], halfway onto the gold Mazda," covered in blood, and asked him what was going on.[68] Lieutenant Jacque's testified that Mr. Smith replied that he had been "shot all over."[69] Lieutenant Jacque then handcuffed Mr. Smith and asked if he had a gun on him and searched Mr. Smith for officer safety.[70] Lieutenant Jacque testified that Mr. Smith said he had left his gun back at the bank.[71] However, if these are the statements Mr. Smith is referring to in his petition, they are clearly admissible. "Because *Miranda* warnings may inhibit persons from giving information, [the United States Supreme Court] has determined that they need be administered only after the person is taken into 'custody' or his freedom has otherwise been significantly restrained."[72] Mr. Smith's

---

[64] *Id.*

[65] *Id.*

[66] Rec. Doc. 1807 at 196-219.

[67] *Id.* at 191-196.

[68] *Id.* at 194.

[69] *Id.* at 194-195.

[70] *Id.* at 195.

[71] *Id.*

[72] *Oregon v. Elstad*, 470 U.S. 298, 309 (1985)*; citing Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

11

first statement ("I'm shot all over") was made prior to being in police custody and therefore there was no requirement that he be *Mirandized* prior to making a statement to the officer. Additionally, the Supreme Court has determined there is a public safety exception to *Miranda*.[73] Law enforcement officers may ask questions of suspects in custody without giving the warnings required under *Miranda* if the questions are "reasonably prompted by a concern for the public safety."[74] Thus, the second statement (the location of his weapon) was in response to a public safety question and is thus admissible under the public safety exception to *Miranda*.

Mr. Smith's attorney was not deficient for failing to address a possible *Miranda* issue with a statement that was never admitted into the record, nor for not arguing against the admission of statements clearly admissible. In fact, Mr. Smith's attorney had previously made an attempt to suppress the statement to Agent Denny.[75] Even though the Court denied the motion, the jury never actually heard about the potentially un-*Mirandized* statement and therefore, it was not part of their deliberation.[76] Mr. Smith has failed to show how his attorney's failure to address this statement at trial prejudiced him in any way. Under the *Strickland* analysis, as mentioned above, either prong can be examined first and failure on one prong obviates the need to analyze the other.[77] Thus, by failing to show how his attorney's failure to re-urge a motion at trial that involved evidence that was not presented to the jury prejudiced him in any way, Mr. Smith's first claim of ineffective assistance of

---

[73] *New York v. Quarles*, 467 U.S. 649 (1984).

[74] *Id.* at 656.

[75] Rec. Doc. 604.

[76] Rec. Doc. 616.

[77] *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069.

12

counsel is without merit.

### 2. *Claim Two: Failure to Follow-up on Plea Agreement Offer*

Mr. Smith's second claim on ineffective assistance of counsel involves an allegation that his attorney failed to follow-up on a plea agreement offer made by the government. Mr. Smith claims his attorney "initiated conversations" with him regarding possible acceptance of a plea but never followed up on the possible plea agreements.[78] Further, Mr. Smith argues that this failure resulted in him proceeding to trial and facing a more severe penalty.[79] The government contends that it never extended a plea offer to Mr. Smith.[80]

The trial transcript supports the government's contention. On the second day of trial the Court asked the attorney for the government if a plea offer was ever made to Mr. Smith.[81] The Assistant U.S. Attorney confirmed that although there had been some discussions early on with Mr. Smith's attorney regarding plea offers, no actual plea offer was ever made to Mr. Smith.[82] Mr. Smith's attorney confirmed this for the Court as well.[83] Mr. Smith was present in the courtroom for this exchange and did not speak up to argue anything different.

There is a difference between plea negotiations and a formal plea offer. "Plea negotiations contemplate a bargaining process" where "[t]he government contemplates making some concession

---

[78] Rec. Doc. 1838 at 15.

[79] *Id.*

[80] Rec. Doc. 1840 at 7.

[81] Rec. Doc. 1808 at 12.

[82] *Id.*

[83] *Id.*

13

to obtain the accused's plea" and "[t]he accused contemplates entering a plea to obtain a concession from the government."[84] Analogous to the world of contracts, the formal plea offer is the final contract resulting from a "meeting of the minds." Rule 410 of the Federal Rules of Evidence recognizes that plea negotiations do not always result in a formal plea offer or agreement by prohibiting the use of statements made during plea negotiations where no formal agreement was made. Further, there is nothing in Rule 11 of the Federal Rules of Criminal Procedure or Rule 410 of the Federal Rules of Evidence that requires that "a particular discussion or series of discussions must produce a plea agreement."[85] Mr. Smith has failed to rebut the record that plea negotiations took place but failed to result in a formal plea offer.

Mr. Smith's claim that he faced a harsher sentence after proceeding to trial due to his attorney's failure to follow through on a plea offer is without merit. Counsel was not ineffective for failing to follow up on proposed plea offers from the government because there were no offers for Mr. Smith to accept. Mr. Smith cannot, and has not shown that he received a harsher sentence than he would have received if he had accepted the plea offer because there never was a formal plea offer from the government.

### 3. *Claim Three: Failure to Address Vague Jury Instruction*

Mr. Smith next contends that his attorney was ineffective for failing to address the "'Fourth' requirement to establish guilt in Count Two" in the jury instructions given by the Court.[86] Mr. Smith was charged in Count Two of the Second Superseding Indictment with aiding and abetting in the

---

[84] *United States v. Robertson*, 582 F.2d 1356, 1366 (5th Cir. 1978).

[85] *United States v. Paden*, 908 F.2d 1229, 1235 (5th Cir. 1990).

[86] Rec. Doc. 1838 at 15.

14

conspiracy to commit bank robbery and in the course of attempting to avoid apprehension for the offense, killing or causing the death of an individual in violation of 18 U.S.C. § 2113(a) and 2113(e) and 18 U.S.C. § 2.[87] Mr. Smith argues that because the evidence presented at trial showed that his firearm was inoperable, and the victim was shot by his co-defendant John Johnson, he should not have been held responsible for causing the death of the victim.[88] The government argues that Mr. Smith's attorney actually raised this argument at trial, but due to being charged as a co-conspirator and aider and abettor, the argument failed.[89]

Mr. Smith's third claim is also without merit. The Court actually discussed with Mr. Smith the fact that he could be held legally responsible for Officer Zaffato's death, even though Mr. Smith did not shoot Officer Zaffato and even if the shooting was not intended or planned in advance, because he was charged as a conspirator and aider and abettor.[90] The Court wanted Mr. Smith to understand his proposed testimony was not a defense to the charges against him.*[91]*

It is well settled under Supreme Court precedent that acts done in furtherance of a conspiracy by a co-conspirator, or acts within the scope of the unlawful objective of the conspiracy, are attributable to all in the conspiracy, whether there was an agreement directed to that act or not.[92]

---

[87] Rec. Doc. 157 at 4.

[88] Rec. Doc. 1838 at 16.

[89] Rec. Doc. 1840 at 8-9.

[90] Rec. Doc. 1807 at 220-1.

[91] *Id.*

[92] *Pinkerton v. United States*, 328 U.S. 640, 646-7, 66 S. Ct. 1180, 1184, 90 L. Ed. 1489, 1496 (1946); s*ee also United States v. Flores-Alejo*, 531 Fed. Appx. 422 (5 Cir. 2013) ("A conspirator is liable for co-conspirators' acts that advance the conspiracy's illicit objective, even if he did not specifically know that the co-conspirators would commit those acts.").

After providing instructions to the jury regarding the conspiracy charge, the Court instructed the jury that the fourth element of Count Two required the government to prove "[t]hat while committing this offense or avoiding or attempting to avoid apprehension for the commission of this offense, the defendant killed or caused the death of an individual."[93] Further, the Court instructed the jury that:

> The guilt of a defendant in a criminal case may be established without proof that the defendant personally did every act constituting the offense alleged. The law recognizes that, ordinarily, anything a person can do for himself may also be accomplished by him through the direction of another person as his or her agent, or by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise.
>
> ...
>
> Before any defendant may be held criminally responsible for the acts of others it is necessary that the accused deliberately associate himself in some way with the crime and participate in it with the intent to bring about the crime.[94]

These jury instructions comport with the Fifth Circuit's pattern jury instructions for an offense of aiding and abetting under 18 U.S.C. § 2 and conspiracy offenses.[95] Mr. Smith has failed to show that his attorney's performance was deficient since he actually raised the argument Mr. Smith is urging currently. Failure to succeed on a given argument is not grounds for ineffective assistance of counsel. Mr. Smith's third claim is also without merit.

### 4. *Claim Four: Failure to Address Mitigating Factors During Sentencing*

In his final claim Mr. Smith urges that his counsel was ineffective for failing to introduce or address "defendant's qualification under U.S.S.G. § 5K2.13 regarding his intellectual

---

[93] Rec. Doc. 1808 at 122.

[94] *Id.* at 124.

[95] *See* Comm. on Pattern Jury Instructions, Dist. Judges Ass'n Fifth Circuit, Pattern Jury Instructions (Criminal Cases) 109, 145, 393 (2015).

deficiencies."[96] The government argues that Mr. Smith's claim is without merit because defense counsel effectively raised Mr. Smith's mental deficiencies in order to remove the potential for the death sentence to be his penalty.[97]

United States Sentencing Guideline § 5K2.13 provides that "[a] downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." Mr. Smith's attorney actively pursued a strategy to remove the possibility of the death penalty. An *Atkins* hearing was held for Mr. Smith June 7-10, 2010.[98] The Court issued an Order on June 23, 2011 prohibiting the death penalty from being imposed on Mr. Smith based on the evidence presented during the *Atkins* hearing.[99] With the death sentence removed as a possible sentence, Mr. Smith waived the Presentence Investigation Report to proceed directly to sentencing since the relevant statutes required a life sentence upon conviction irrespective of the guideline calculations.[100] Thus, Mr. Smith has failed to show how his counsel's performance was deficient since they were able to successfully argue that his mental deficiencies precluded the application of the death penalty.

B. *Movant's Entitlement to Evidentiary Hearing*

Section 2255(b) requires the Court to "grant a prompt hearing" on any motion filed under

---

[96] Rec. Doc. 1838 at 16.

[97] Rec. Doc. 1840 at 10.

[98] Rec. Docs. 1527, 1528, 1529 and 1534.

[99] Rec. Doc. 1630.

[100] *See Dorsey v. United States*, 132 S.Ct. 2321, 2327 (2012) (statutory minimum trumps guidelines).

17

its auspices, "[u]nless the motion and the files and records of the case conclusively show the prisoner is entitled to no relief."[101] Further, the United States Court of Appeals for the Fifth Circuit has held that if the prisoner fails to show any "independent indicia of the likely merit of [his] allegations" the court can dispose of the allegations without inquiring further.[102] The record in this case conclusively shows that Mr. Smith is not entitled to relief. Accordingly, the Court finds that an evidentiary hearing is not warranted here.

## V. Conclusion

Based on the foregoing,

**IT IS HEREBY ORDERED** that Joseph Smith's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

**NEW ORLEANS, LOUISIANA,** this 28th day of January, 2016

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

---

[101] 28 U.S.C. § 2255(b).

[102] *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006); *see also United States v. Smith*, 915 F.2d 959, 964 (5th Cir. 1990).