UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 04-17** |
| **JOSEPH SMITH** | **SECTION: "G"** |

## ORDER AND REASONS

Before the Court is Defendant Joseph Smith's ("Smith") Motion for Compassionate Release Under 18 U.S.C. 3582(c)(1)(A) and the First Step Act.[1] In the motion, Smith asserts that the Court should grant compassionate release and reduce his sentence.[2] The government opposes the motion.[3] For the reasons discussed in detail below, Smith has not demonstrated an "extraordinary and compelling reason" to warrant a sentence reduction.[4] Even if a compelling reason was established by Smith, the Section 3553(a) factors do not support a reduction. Accordingly, having considered the motion, the memorandum in support, the record, and the applicable law, the Court denies the motion.

## I. Background

### A.  *Factual Background*

This case arises from an attempted bank robbery that resulted in the death of Orleans Parish

---

[1] Rec. Doc. 1859.

[2] *Id.*

[3] Rec. Doc. 1863.

[4] 18 U.S.C. § 3582(c)(1)(A).

1

Criminal Deputy Sheriff Sidney Zaffuto, who was working a security detail at the bank.[5] The three co-defendants, Joseph Smith, Herbert Jones and John Johnson entered the Iberia Bank on General DeGaulle Drive in New Orleans, Louisiana, on January 8, 2004, around 11:45 a.m. Smith approached bank security officer, Deputy Zaffuto, held a firearm to Deputy Zaffuto's head, and disarmed Deputy Zaffuto. Smith and co-defendant John Johnson were shot by another bank security guard, Orleans Parish Deputy Sheriff Andrew Jenkins. Smith fell to the floor due to his injury. The third co-defendant, Herbert Jones, fled the bank as the shooting began. Deputy Zaffuto retrieved Smith's gun and attempted to shoot Johnson several times, however, the gun would not fire. Johnson shot at Deputy Zaffuto and fatally hit him in the chest. Smith then jumped on Deputy Zaffuto, recovered his firearm, and attempted to shoot Deputy Jenkins, using Deputy Zaffuto's body as a shield. Johnson shot Deputy Jenkins and then fled the bank with Smith. New Orleans Police Lieutenant Reginald Jacque, upon arriving on the scene, observed Smith leaning out of a parked vehicle, covered in blood. Lieutenant Jacque asked Smith what was wrong, to which Smith responded, "I'm shot all over." Lieutenant Jacque immediately handcuffed Smith and asked if Smith had a weapon on him, to which Smith replied that he had left his weapon inside the bank.

B.   *Procedural Background*

On January 16, 2004, a federal grand jury in the Eastern District of Louisiana charged John Johnson, Herbert Jones, and Joseph Smith in a single-count indictment with Bank Robbery Resulting in Death.[6] The case was originally allotted to the Honorable Helen G. Berrigan.

On January 30, 2004, the government filed a Superseding Indictment which again charged the defendants with Bank Robbery Resulting in Death, adding a Notice of Special Findings and

---

[5] *See* Rec. Doc. 1842 (factual background derived from trial transcript).

[6] Rec. Doc. 1.

the Intent of the Government to Seek the Death Penalty.[7] A Second Superseding Indictment was filed on January 28, 2005, which contained five separate charges.[8] Smith was charged in four of those counts: (1) Count One–Conspiracy to Commit Bank Robbery Resulting in Death; (2) Count Two–Bank Robbery Resulting in Death, (3) Count Three–Use of a Firearm During a Crime of Violence Resulting in Death; (4) Count Five–Use of a Firearm During a Crime of Violence.[9] The Second Superseding Indictment again contained a Notice of Special Findings and the Intent of the Government to Seek the Death Penalty.[10] On June 23, 2011, the Court entered an order that barred the Government from seeking the death penalty against Smith.[11]

Smith was tried before a jury on September 23, 2013.[12] On September 24, 2013, the jury returned a verdict of guilty on all counts.[13] On October 9, 2013, Smith was sentenced to a term of imprisonment of life as to Count Two, life as to Count Three, and 60 months as to Count One, to be served concurrently.[14] He was sentenced to 60 months as to Count Five, which was ordered to run consecutive to the other counts.[15] On July 24, 2014, the Fifth Circuit dismissed Smith's appeal as frivolous.[16]

---

[7] Rec. Doc. 26.

[8] Rec. Doc. 157.

[9] *Id.*

[10] *Id.*

[11] Rec. Doc. 1630.

[12] Rec. Doc. 1793.

[13] Rec. Doc. 1794.

[14] Rec. Doc. 1801.

[15] *Id.*

[16] Rec. Doc. 1818.

Smith filed a Motion to Vacate on July 14, 2015.[17] On January 6, 2016, the case was randomly reallotted to this Section due to the retirement of Judge Berrigan.[18] The Motion to Vacate was denied by this Court on January 28, 2016.[19] Smith then attempted to pursue a successive Motion to Vacate on August 17, 2017.[20] On November 21, 2017, the Fifth Circuit denied Smith leave to file a successive motion.[21]

On September 19, 2024, Smith filed the instant Motion for Compassionate Release.[22] On November 19, 2024, the government filed an opposition to the motion.[23] On January 10, 2025, Smith filed a reply brief in further support of the motion.[24]

## II. Parties' Arguments

### A.    *Smith's Arguments in Support of the Motion*

Smith asserts that his various medical conditions constitute a compelling and extraordinary reason justifying his release.[25] These conditions include anemia, hyperlipidemia, blindness, an NSTEMI myocardial infarction, nonrheumatic mitral valve disorder, congestive heart failure, chronic kidney disease, and a history of arthritis.[26] He further states that he is "suffering from a

---

[17] Rec. Doc. 1838.

[18] Rec. Doc. 1841.

[19] Rec. Docs. 1842, 1843.

[20] Rec. Doc. 1853.

[21] Rec. Doc. 1855.

[22] Rec. Doc. 1859 at 3.

[23] Rec. Doc. 1863.

[24] Rec. Doc. 1866.

[25] Rec. Doc. 1859.

[26] *Id.* at 3.

serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he [] is not expected to recover."[27] Smith states he was transferred to FMC Fort Worth because he requires daily assistance with living.[28] Smith argues he would not be a danger to society as he is completely blind and needs assistance performing even the most basic daily tasks.[29]

### B.    *The Government's Arguments in Opposition to the Motion*

The government argues that Smith has not demonstrated extraordinary and compelling reasons to justify compassionate release.[30] The government contends that Smith does not have a terminal illness or condition that substantially diminishes his ability to provide selfcare within a correctional facility.[31] The government asserts that the medical records refute Smith's assertion that he is unable to provide selfcare.[32] The government argues that Smith's medical conditions are widespread in individuals as they age, and none appear critical or terminal.[33]

The government argues that the Section 3553(a) factors need not be considered because Smith did not establish an extraordinary and compelling reason for a sentence reduction.[34] Even if a compelling reason was established by Smith, the government asserts that two factors weigh

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 4.

[30] Rec. Doc. 1863 at 6.

[31] *Id.*

[32] *Id.* at 7.

[33] *Id.* at 9.

[34] *Id.*

5

heavily against any reduction.[35] First, the government contends any sentence in this matter must "reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense."[36] The government argues that Smith's sentence should reflect the callousness of the offense and show that society will take every lawful measure to avenge the death of a sworn police officer.[37] Second, the government asserts the sentence must provide adequate deterrence, and the present life term informs society that potential bank robbers who cause the death of an individual will be sentenced in a severe manner.[38]

C.    *Smith's Arguments in Further Support of the Motion*

In reply, Smith argues his blindness diminishes his ability to provide selfcare, as acknowledged by the BOP's decision to transfer him to a medical facility.[39] According to Smith, the medical records show he has numerous potentially life-threatening health issues.[40] He argues these conditions diminish his ability to provide selfcare within the medical facility.[41] He asserts his needs would be better served in a medical facility outside of the BOP.[42]

### III. Legal Standard

Generally, a "court may not modify a term of imprisonment once it has been imposed."[43]

---

[35] *Id.*

[36] *Id.* at 10 (quoting 18 U.S.C. § 3553(a)(2)(A)).

[37] *Id.*

[38] *Id.*

[39] Rec. Doc. 1866 at 1.

[40] *Id.*

[41] *Id.* at 3.

[42] *Id.*

[43] 18 U.S.C. § 3582(c)(1)(A).

Federal law provides three exceptions:

>(1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A);[44]
>
>(2) "to the extent expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"[45]; or
>
>(3) when the defendant was sentenced based on a retroactively lowered sentencing range.[46]

Smith moves the Court to reduce his sentence under Section 3582(c)(1)(A).[47] Motions to reduce a sentence under Section 3582(c)(1)(A) are often referred to as "compassionate release" motions.[48] Prior to 2018, only the Director of the BOP could file a compassionate release motion under Section 3582(c)(1)(A).[49] In 2018, Congress passed and the President signed into law the First Step Act.[50] That Act amended the process to file compassionate release motions by permitting prisoners to file such motions directly with a court.[51]

Yet, before filing a compassionate release motion directly with a court, a prisoner must exhaust the administrative requirements under Section 3582(c)(1)(A).[52] Indeed, under 3582(c)(1)(A), a defendant may personally move the Court to reduce his or her sentence only after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the

---

[44] *Id.*

[45] *Id.* § 3582(c)(1)(B).

[46] *Id.* § 3582(c)(2).

[47] Rec. Doc. 1859.

[48] *See, e.g., United States v. Reeves*, No. CR 18-00294, 2020 WL 1816496, at *1 (W.D. La. Apr. 9, 2020).

[49] *Id.*

[50] *See id.*

[51] *See id.*

[52] *See* 18 U.S.C. § 3582(c)(1)(A).

7

Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier.[53]

Once Section 3582(c)(1)(A)'s exhaustion requirement is satisfied, a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction" and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[54] Finally, the Court must "also consider[] the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."[55]

### IV. Analysis

#### A.    *Whether Smith Has Exhausted Administrative Remedies*

A defendant must exhaust administrative remedies before filing a motion in the district court seeking compassionate release pursuant to Section 3582(c)(1)(A).[56] If a defendant submits a request for compassionate release to the warden of his facility, and thereafter there is a "lapse of 30 days from the receipt of such a request by the warden of the defendant's facility,"[57] the exhaustion requirement is satisfied, and the Court may consider a motion for compassionate release filed by the defendant. The Fifth Circuit has held that the exhaustion requirement is not jurisdictional, but it is a mandatory claim-processing rule.[58] Because the administrative exhaustion

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *United States v. Franco*, 973 F.3d 465, 468 (5th Cir. 2020) ("The statute's requirement that a defendant file a request with the BOP before filing a motion in federal court is a [mandatory] nonjurisdictional claim-processing rule."); 28 U.S.C. § 3582(c)(1)(A).

[57] *Franco*, 973 F.3d at 468.

[58] *Id.*

8

requirement is a claim-processing rule, it must be enforced unless it is waived by the government.[59]

Attached to the motion for compassionate release, Smith presents a document dated July 6, 2024, and addressed to Warden C. Rivers, which requests compassionate release.[60] The government does not dispute that Smith has exhausted his administrative remedies.[61] The documentation submitted by Smith suggests that he requested compassionate release by submitting a request to the warden on July 6, 2024, and his request was denied. Therefore, the Court may evaluate Smith's request for compassionate release on the merits.

### B.     *Whether Extraordinary and Compelling Reasons Warrant a Sentence Reduction*

Pursuant to 28 U.S.C. § 3582(c)(1)(A)(i), a district court may reduce a term of imprisonment if the court finds "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Section 1B1.13 of the United States Sentencing Guidelines is the applicable policy statement. Section 1B1.13 defines the term "extraordinary and compelling reasons" to include certain medical circumstances of the defendant, the age of the defendant, family circumstances of the defendant, when the defendant was a victim of abuse, other reasons of similar gravity, and when the defendant received an unusually long sentence.[62] The Fifth Circuit defines the term "extraordinary" as "beyond or out of the common order," "remarkable," and synonymous with

---

[59] *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule since the Government did not waive the exhaustion issue on appeal.").

[60] Rec. Doc. 1859-1.

[61] Rec. Doc. 1863 at 5.

[62] U.S.S.G. § 1B1.13 (2024).

"singular."[63] The Fifth Circuit defines the term "compelling" as "to drive or urge with force, or irresistibly," "to force," and "to subjugate."[64] The defendant must show that he "face[s] some extraordinary severe exigency, not foreseeable at the time of sentencing, and unique to the life of the prisoner."[65]

Smith asserts his various medical conditions constitute a compelling and extraordinary reason justifying his release.[66] These conditions include anemia, hyperlipidemia, blindness, an NSTEMI myocardial infarction, nonrheumatic mitral valve disorder, congestive heart failure, chronic kidney disease, and a history of arthritis.[67] He further states that he is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he [] is not expected to recover."[68]

Smith has not demonstrated that his medical conditions constitute an extraordinary and compelling reason to justify his release. The Sentencing Commission's relevant policy statement specifies that, to be sufficiently serious to warrant release, a medical condition must be a "terminal illness," or a condition that "substantially diminishes the ability of the defendant to provide selfcare within the environment of a correctional facility and from which he [] is not expected to recover."[69] Review of the medical records reveals that Smith's conditions are not considered life-threatening,

---

[63] *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023).

[64] *Id.*

[65] *Id.*

[66] Rec. Doc. 1859.

[67] *Id.* at 3.

[68] *Id.*

[69] U.S.S.G. § 1B1.13 (2024).

10

and his conditions do not substantially diminish his ability to provide selfcare within the environment of a correctional facility.

A social worker observed during a September 25, 2024 session:

> Mr. Smith is a 73 year old male CL4 Medical Classification assigned to the Nursing Care Center (NCC Unit). His conditions are medically stable and managed with medication at this time. Mr. Smith walks independently and at times, utilizes Wheelchair by self-ambulating with legs slowly in atrium of NCC. Mr. Smith utilizes assistance as needed for pushing and transfers. Mr. Smith presented with appropriate hygiene and was alert and oriented in all spheres.[70]

On September 24, 2024, a dietician met with Smith, reporting he was "on a regular diet and feeds self without special feeding devices/utensils," he denied "any pain related to eating," and he denied "any chewing/swallowing difficulties."[71]

As the medical records demonstrate, Smith is consistently seen by doctors and medical personnel to address his various needs. During a clinical evaluation on September 12, 2024, the following observations were made:

> Cardiac: 73 yo african american male, care level 4, seen in Lubbock unit for monthly evaluation. He sees the Cardiologist due to hx of MI in 2022, Coronary Artery Disease, and history of percutaneous coronary intervention to the obtuse marginal branch. He was recently seen and recommended for an ECHO prior to follow-up. He presents without complaint of chest pain, palpitations, leg swelling, or exercise intolerance. Pain: No
>
> Nephrology: He also sees Urology for elevated PSA levels and nocturia. Review of records show that a biopsy was conducted and was negative, that PSA levels have been between 6 and as high as 11, and he reports having two to three urination episodes per night. He was recently seen by the Urologist, placed on antibiotics for 30 days and instructed to have a PSA completed prior to follow-up. He currently denies dysuria, frequency, urgency, suprapubic discomfort, or flank pain. Pain: No
>
> Gastrointestinal: He is being followed by gastroenterology and most recently had a EGD and Colonoscopy in 2023. The EGD showed antral gastrophy and the colonoscopy showed 4 polyps that were removed. He is scheduled for followed

---

[70] Rec. Doc. 1863-2 at 6.

[71] *Id.* at 13.

> colonoscopy within 5 years; he currently denies any bloody stools, dark tarry stools, abdominal pain or discomfort, nausea or vomiting. Pain: No
>
> Ophthalmology: He also presents with hx of glaucoma and legal blindness. He has been observed exercising in the hallway with the utilization of a walking stick. (emphasis added). He reports ADL's without assistance, has an active consultation for yearly follow-up. He denies eye pain, discharge, or any concerns. Pain: No[72]

The clinician also noted that Smith appeared "pleasant," "cooperative," "well, alert and oriented."[73] His mood, posture, grooming/hygiene, affect, speech and language were all within normal ranges.[74]

Smith offers nothing to refute these findings made by medical professionals. Smith has failed to establish a compelling and extraordinary reason justifying a reduction of his sentence. His medical conditions are widespread in individuals as they age. Therefore, these conditions are not extraordinary and are instead "commonplace."[75] The medical records show that the BOP has and will continue to address Smith's medical needs.

### B.    *Whether the Section 3553(a) Factors Weigh in Favor of Reducing Smith's Sentence*

If "extraordinary and compelling" circumstances warrant a reduction in sentence, the Sentencing Guidelines' policy statement regarding compassionate release states that a defendant's sentence may be reduced only if "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and the Court's determination is in line

---

[72] *Id.* at 24.

[73] *Id.* at 25.

[74] *Id.* at 26.

[75] *See United States v. Thompson*, 984 F.3d 431, 434 (5th Cir. 2021) (affirming denial of compassionate release for inmate with hypertension and high cholesterol, noting that "both [conditions] are commonplace" and not "extraordinary").

with "the factors set forth in 18 U.S.C. § 3553(a)."[76] Even assuming that extraordinary and compelling circumstances warrant a reduction in sentence, for the reasons that follow, Smith has not shown that he is not a danger to the community or that the Section 3553(a) factors favor his release.

Section 3142(g) sets out the factors courts must consider in deciding whether to release a defendant pending trial. The factors related to whether a petitioner is a danger to the community include: "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."[77] Section 3553(a), which sets forth the factors to consider in initially imposing a sentence, requires the Court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
> (2) the need for the sentence imposed—
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.][78]

Smith is a 73-year-old, African American male.[79] Smith's conviction relates to his role in

---

[76] U.S.S.G. § 1B1.13 (2024).

[77] 18 U.S.C. § 3142(g).

[78] 18 U.S.C. § 3553(a).

[79] Rec. Doc. 175 at 4.

13

an attempted bank robbery that resulted in the death of Orleans Parish Criminal Deputy Sheriff Sidney Zaffuto, who was working a security detail at the bank.[80] Smith was tried before a jury on September 23, 2013.[81] On September 24, 2013, the jury returned a verdict of guilty on all counts.[82] On October 9, 2013, Smith was sentenced to a term of imprisonment of life as to Count Two, life as to Count Three, and 60 months as to Count One, to be served concurrently.[83] He was sentenced to 60 months as to Count Five, which was ordered to run consecutive to the other counts.[84]

Smith was involved in the murder of a police officer who was attempting to stop a bank robbery. His behavior during the robbery shows disrespect for human life. This reflects the callousness of the offense, and his release would minimize the severity of his offense. The sentence must also provide adequate deterrence. The present life term informs society that potential bank robbers who cause the death of an individual will be addressed in a severe manner. Any reduction would lessen that purpose. Therefore, the Court finds that the relevant factors under Section 3142(g) and Section 3553(a) weigh against release.

## **V. Conclusion**

For the reasons discussed above and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the Court finds that no extraordinary and compelling reasons warrant a reduction of Smith's sentence. Additionally, the Section 3553(a) factors do not support a reduction, and a reduction would be inconsistent with the applicable U.S. Sentencing Commission policy statement. Accordingly,

---

[80] *See* Rec. Doc. 1842 (factual background derived from trial transcript).

[81] Rec. Doc. 1793.

[82] Rec. Doc. 1794.

[83] Rec. Doc. 1801.

[84] *Id.*

14

**IT IS HEREBY ORDERED** that Defendant Joseph Smith's Motion for Compassionate Release Under 18 U.S.C. 3582(c)(1)(A) and the First Step Act[85] is **DENIED**.

**NEW ORLEANS, LOUISIANA,** this  5th   day of March, 2025.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[85] Rec. Doc. 1859.